IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff,

   vs.

                                     No. 19 CR 02180 WJ

TAVOR TOM,

                Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW Defendant Tavor Tom, by and through Counsel, Assistant Federal Public Defender James C. Loonam, and, hereby files this sentencing memorandum for the Court's review and consideration in support of the plea agreement and to aid the Court in arriving at a fair, just and reasonable sentence in accordance with 18 U.S.C. §3553(a) and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005).

On July 1, 2019, Tavor Tom entered his Aunt's home, intoxicated on dextromethorphan and craving more; he slashed and stabbed his Aunt multiple times, causing her death. Tavor then took her car keys, drove to Walmart, stole more cold medicine that contained dextromethorphan and tried to end his life by overdosing on the drug. Tavor was just seven months past his 18th birthday when

he did this.   The events and circumstances that led to this horrific event began several years earlier.   In an effort to better provide the Court with information relevant to this matter Mr. Tavor Tom was evaluated by Dr. Eric Westfried a Certified Forensic Clinical Psychologist.   Dr. Westfried's evaluation report will be provided to the Court and the Government separately from this pleading.   This document will be cited to as "*Westfried* at p__".

Tavor Tom had been abusing over the counter cold medicine since age of 14, *Westfried* at p5.   He first attempted suicide by overdose of cold medicine at age 16. *Id.*   Tavor is addicted to Dextromethorphan. Dextromethorphan is a synthetic, methylated dextrorotary analogue of levorphanol, a substance related to codeine and a non-opioid derivate of morphine.[1] Dextromethorphan [DXM] is an over-the-counter antitussive medication present in many brands of cough, cold, and flu preparations, such as Robitussin, Mucinex, DayQuil, and others. At high doses, DXM can produce psychedelic symptoms including mania, panic, extreme agitation, and hallucinations. Dextromethorphan poisoning can also cause slow breathing, fast heart rate, increased blood pressure, psychosis (losing contact with reality), seizures, coma, and death.[2] When DXM is abused regularly it can actually cause symptoms

---

1 https://pubchem.ncbi.nlm.nih.gov/compound/Dextromethorphan
2 https://www.poison.org/articles/2015-sep/dextromethorphan

that are the opposite of the user's intent such as insomnia and dysphoria (unease, unhappiness).*Id.*   DXM's active metabolite, Dextrorphan, a noncompetitive NMDA receptor antagonist, works in similar ways to ketamine and PCP.[3]   In the United States, abuse of dextromethorphan leads to approximately 6000 emergency department visits a year. Fifty percent of all emergency department visits due to dextromethorphan toxicity are patients between the ages of 12 and 20.[4]   For over a decade, some doctors have been calling for Dextromethorphan to be reclassified, in part due to its addictive qualities. "Dextromethorphan is a psychotropic substance that carries a potential for abuse and dependence. On the basis of the currently available data, its reclassification as a prescription drug should be considered."[5]

Dr. Westfried points out that Tavor required hospitalization at least 10 times for DXM overdoses. *Westfried* at p5.   Five incidents were identified as attempted suicide by overdose. *Id*. Each hospitalization indicates that Tavor exhibited signs of chronic depression. Placing these incidents in a chronological timeline gives context to the causal nature Tavor's addiction had to the crime before this Court. Reviewing

---

3  B. Martinak, et al, *Dextromethorphan in Cough Syrup: The Poor Man's Psychosis*, Psychopharmacol Bull, v.47(4); 2017 Sep 15.

4    J. D. Journey, S. Agrawal, E. Stern, *Dextromethorphan Toxicity,* StatPearls Publishing; 2020 Jan, A service of the National Library of Medicine, National Institutes of Health.
https://www.ncbi.nlm.nih.gov/books/NBK538502/?report=printable
5  Mutschler J, Koopmann A, Grosshans M, Hermann D, Mann K, Kiefer F. Dextromethorphan withdrawal and dependence syndrome. Dtsch Arztebl Int. 2010;107(30):537-540. doi:10.3238/arztebl.2010.0537

the medical records Dr. Westfried references, here is a time line of some of Tavor's
hospital visits.   Where the medical staff indicated that the incident was a suicide
attempt it is indicated as such here.

| | |
|---|---|
| 11/16/17 | ER OD/Suicide Norther Navajo Medical Center [NNMC] |
| 11/16-21/17 | Mesilla Valley Hospital in patient treatment post suicide attempt. |
| 7/2-9/18 | Kootenai Health Coer d'Alene ID    OD/intentional/Suicide |
| 7/11- 8/9/18 | IN PX Eight Northern Pueblos –Butterfly Healing Center Taos NM |
| 9/27/18 | ER OD NNMC |
| 11/19/18 | ER    OD "rambling, not making sense" NNMC |
| 1/26/19 | ER OD/Suicide Attempt NNMC |
| 4/28/19 | ER OD/Suicide Attempt, unconscious, intubated NNMC |
| 5/18/19 | ER OD/Suicide Attempt NNMC |
| 6/8/19 | ER OD/Suicide Attempt NNMC |
| 6/10-14/19 | ER intake OD, found passed out in mall NNMC |
| 6/28/2019 | ER OD/Suicide Attempt NNMC |
| 7/1/19 | OD/Suicide attempt after committing this crime NNMC(The instant offense) |

During the calendar year leading up to this crime Tavor Tom's addiction and
abuse of DXM rapidly increased.   In the seven months between Tavor's 18th
birthday and the killing of his Aunt, Tavor was hospitalized six times for overdosing
on DXM and five of these were deemed suicide attempts.   Suicide is the second
leading cause of death among American Indian and Alaska Native youth ages 8 to

4

24.[6]   According to the National Alliance on Mental Illness (NAMI), 28.3% of Native American adults are living with a mental illness.   Factors cited as barriers to treatment of Native peoples mental health issues include rural locations of residence, lack of insurance and poverty, and lack of access to culturally integrated treatment options.

It is with hindsight that we see the pattern of escalating mental health issues in Tavor's medical records.   In 2019 between his first hospitalization for suicide and his second, there was a period of 3 months.   Then three suicide attempts follow with less than a month between each.   His fifth attempt came the day of the murder of his Aunt.   Tavor told Dr. Westfried that only two of his overdoses were intentional suicide attempts. *Westfried* at p6.   Some studies would suggest that Tavor's continued abuse of DXM with increasing frequency leading up to the murder was an expression of his suicidal inclinations.[7]   Medical records contained in discovery material provided by the Government indicates that Tavor consumed 56 Mucinex over the counter cold medicine pills containing Dextromethorphan on the day of the killing of his aunt. Bates p 120.

6  https://www.samhsa.gov/tribal-affairs
7   Saeed Ahmed et al., *Addiction and Suicide: An Unmet Public Health Crisis*
American Journal of Psychiatry, 2017("All individuals who abuse substances should receive a thorough suicide risk assessment in order to determine the level of care that is needed")

Dr. Westfried opines that Tavor was suffering from major depressive disorder and hallucinogenic abuse disorder, and was intoxicated with DXM when the killing took place. *Westfried* at p 10.   Dr. Westfried goes on the state that in his clinical opinion Tavor was "functioning at a significantly reduced mental capacity affecting his ability to exercise his substantial capacities of reason and to control his behavior he would have known to be harmful." *Westfried* at p 10. What Dr. Westfried points out is that Tavor was not operating under these same conditions when he was evaluated by Dr. Westfried seven months later in jail and sober.   Dr. Westfried noted that Tavor exhibited some exceptional mental capacities when evaluated that appear to have been completely lacking in his behavior on the day he killed his aunt. *Id*.   In finding that Tavor likely met the definition of Diminished Capacity as outlined in USSG §5K2.13 Dr. Westfried points out that Tavor's "dyscontroled behavior without consideration of wrongfulness" on the day of the killing "is in marked contrast to his behavior when not depressed or intoxicated on an hallucinogen." *Westfried* at p 1.

The Sentencing Guideline section noted above that contains the policy statement regarding "Diminished capacity", USSG§5K2.13, specifically states that the Court should not consider for purposes of a departure if the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants.

6

USSG§5K2.13.   Tavor Tom began his abuse of DXM at age 14. PSR ¶60, see also:

ECF Doc. 41, (United States' Sentencing Memorandum) p. 1.   Four years later, on

the date of the instant offense, Tavor was significantly addicted to this drug.   The

national Institute on Drug Abuse describes addiction this way:

> Addiction is a chronic disease characterized by drug seeking and use
> that is compulsive, or difficult to control, despite harmful
> consequences. The initial decision to take drugs is voluntary for most
> people, but repeated drug use can lead to brain changes that challenge
> an addicted person's self-control and interfere with their ability to resist
> intense urges to take drugs.

*Understanding Drug Use and Addiction*, June 2018,
https://www.drugabuse.gov/publications/drugfacts/understanding-drug-use-addiction.

On the date of the killing Tavor had been addicted and abusing to DXM for

over four years.   Tavor's out of control craving for more of this drug played a

significant part in his actions in committing this crime a fact recognized by the

Government. ECF Doc.41(US Sentencing Memorandum) p. 1.   Such addiction

vitiates volition.   "Drug use alters brain circuitry that is involved in self-regulation

and reward processing, as well as brain circuits that process mood and stress. For a

person with a serious substance use disorder, taking drugs is no longer pleasurable

or volitional, for the most part, but is instead a means of diminishing excruciating

distress and satisfying powerful cravings — despite often devastating

7

consequences."[8]   This Court should find that his intoxication on the date of the crime was not due to "caused by the voluntary use of drugs." USSG§5K2.13.

The Sentencing Guidelines would also state that the Court should not depart under USSG§5K2.13 due to the violent nature of the crime.   Here the Sentencing Guidelines directly contradict Dr. Westfried's finding, as his conclusion shows:

> Irritability and impulsive behavior involving acting without thinking about consequences are part of behavior associated with depression and with us of an hallucinogen. It is probably Mr. Tom's cognitive functioning was significantly comprised by both those factors at the time of the instant case. Consequently, it is the clinical opinion of this examiner that at the time of the instant case he was functioning at a significantly reduced mental capacity affecting his ability to exercise his substantial capacities of reason and to control his behavior he would have known to be harmful.

*Westfried* at p 10.

There is no more difficult task placed before a Court than to formulate a sente4nce for a horrific crime when some of the causal forces are within the control of the defendant, yet some are not.   Here, Tavor Tom was just 18 years old; he committed this crime to get drugs, drugs that had been controlling his life for the past four years.   Since his middle schools days Tavor life to some extant has been controlled by his abuse of and addiction to Dextromethorphan.   The act that he

---

8   N.D .Volkow, M.D., *Stigma and the Toll of Addiction,* N ENGL J MED 2020; 382:1289-1290
DOI: 10.1056/NEJMp1917360

comes before the Court for is clearly an act that is a product of that abuse and addiction.   As Dr. Westfried states Tavor's addiction negatively affected "his ability to exercise his substantial capacities of reason and to control his behavior he would have known to be harmful."   When one chooses to do an act they know is wrong, that is evidence of the culpable mind, when one loses the ability to fully exercise control over their choices, they must be deemed less culpable.

Therefore, this Court should consider Dr. Westfried's conclusion that Tavor was operating under diminished capacity when he committed this crime as relevant in formulating the appropriate sentence.     The first factor the law suggests the Court consider in imposing a sentence equates this with the circumstances of the offense itself.

Factors to be considered in imposing a sentence.—

….

 The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

18 U.S.C.§3553(a)(emphasis added)

 The crime before the Court is one of immense tragedy.   All indications are that Tavor Tom loved his aunt and had a great relationship with her. He will live

with knowing that almost his first act as an adult is that he took the life of someone he loved in a stupor caused by a drug he had been addicted to since the seventh grade.   The nature and circumstances of this crime are unique.   There is no pragmatic way to compare it to a similar act.   Tavor knows that his actions have caused everyone he loves and cares about almost unbearable pain.

In light of his youth, the role of his addiction, and the recognition that Tavor will face consequences of loss of part of his family for the rest of his life due to his action, he respectfully requests this Court to consider a variance below the guideline range in this matter.    Tavor Tom request the Court to consider a sentence of 7 years or 84 months of incarceration as the appropriate sentence in this matter. Such a sentence is a significant consequence that respects the law and takes into account the several diverse aspects of the crime committed, including all causal factors.   While imposing a significant consequence, it would not have the effect of over punishing for a crime committed at age 18, the roots of which reach back to Tavor's childhood drug addiction.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

[*electronically filed*]_____
James C. Loonam
Attorney for Defendant